# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

FILED

May 20, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | CCA No: 02C01-9707-CR-00254 |
| Appellee, | ) | |
| | ) | Shelby County |
| v. | ) | |
| | ) | Hon. Joseph Dailey, Judge |
| | ) | |
| THOMAS LEWIS, | ) | (Especially Aggravated Kidnaping – |
| | ) | 2 Counts; Aggravated Robbery – |
| Appellant. | ) | 2 Counts) |
| | ) | |

FOR THE APPELLANT:

Loys A. "Trey" Jordan, III
80 Monroe Avenue, Suite 550
Memphis, TN 38103

Bradley J. Cordts
6263 Poplar Avenue, Suite 1132
Memphis, TN 38119

FOR THE APPELLEE:

John Knox Walkup
Attorney General and Reporter

Elizabeth Ryan
Assistant Attorney General
425 Fifth Avenue North
2nd Floor, Cordell Hull Building
Nashville, TN 37243-0493

William L. Gibbons
District Attorney General

Terrell L. Harris
James Morton Lammey, Jr.
Assistant District Attorneys General
201 Poplar Avenue, Third Floor
Memphis, TN 38103

OPINION FILED: _____

CONVICTIONS AFFIRMED; SENTENCES MODIFIED

ROBERT W. WEDEMEYER, Special Judge

**O P I N I O N**

On May 16, 1996, the appellant was charged with two counts each of especially aggravated kidnaping and aggravated robbery. At the March 1997 jury trial, the appellant was convicted on all charges. The trial court imposed twenty-year sentences for the especially aggravated kidnaping convictions and ten-year sentences for the aggravated robbery convictions. The trial court further ordered the sentences to run consecutively for an effective sentence of sixty years.

In this appeal, the appellant makes the following claims of error:

1. The trial court erred in denying defendant's motion to suppress;

2. The evidence was insufficient to support the verdict;

3. The trial court erred when it required the defendant to make in-court statements; and

4. The trial court improperly sentenced him.

Following our review, we affirm the convictions and modify the sentences as set out below.

**FACTUAL BACKGROUND[1]**

**Suppression Hearing**

On November 6, 1995, while investigating the robbery of Exline Pizza, Officer Tim Cook of the Memphis Police Department developed the appellant and Carlos Malone as suspects. Officer Cook located both men and asked them to come to the police station to answer questions about the robbery.

At approximately 12:50 p.m. on November 8, 1995, Malone and the appellant went to the station where they were placed in separate interview rooms. Officer Cook and Officer C.D. Gordon entered the appellant's interview room at 1:30 p.m. and asked the appellant to read aloud his *Miranda* rights as contained on the advice of rights form. Upon reading his rights, the appellant signed the form and indicated to the officers that he understood his rights and wished to invoke his right to remain silent. Officer Cook advised the appellant that he was under arrest. Officer Cook also told the appellant that after Malone's statement was taken, the appellant would be taken downstairs for booking. Honoring the appellant's wish not to speak with the police, no one with the

---

[1] Because the appellant challenges the trial court's denial of his motion to suppress, the facts established at the suppression hearing and at trial are set forth herein.

department spoke with the appellant. Malone was interviewed and taken home.

At approximately 3:30 p.m., Officer Cook re-entered the appellant's interview room to get statistical information for the arrest ticket. Lt. Steve Cole, also of the Memphis Police Department, testified that he also took some of the statistical information for the arrest ticket. When the appellant asked Cook why he was under arrest, Cook responded that a witness had identified the telephone in the appellant's possession as being taken during the Exline Pizza robbery. The appellant told Officer Cook that he wanted to talk about the telephone; however, Cook told the appellant to think about it and left the room. When Officer Cook returned a few minutes later, the appellant expressed his continued desire to talk.

Both Officers Cook and Gordon witnessed the appellant's execution of a second advice of rights form at 3:50 p.m. The appellant did not request an attorney. During the ensuing conversation, the appellant admitted to his involvement in a number of robberies. At 11:05 a.m. the next morning, Officers Cook and Gordon took several statements from the appellant, including a statement about his involvement in the robbery of Christa Richards and Sean Greene. The appellant admitted to the aggravated robbery of these victims. Before giving each statement, the appellant executed a waiver of rights form; however, he did not ask for an attorney on any of these occasions.

The appellant testified that he was at his mother's home when he was surrounded by police and taken to the station in the back of the patrol car. He added that he did not feel he was free to leave. At the station, he said he was placed in a small interrogation room and leg-shackled to the chair. The appellant maintained that he had asked for an attorney during the investigation and made a statement to Officer Cook based on the promise of leniency.

**Trial**

On May 22, 1995 at approximately 8:30 p.m., Sean Greene escorted his fiancé, Christa Richards, to her car following a visit. The two spent several minutes talking by the car when Ms. Richards noticed a man, later identified as the appellant, walking past the other side of the car. The appellant turned around and walked back towards her. The appellant then opened his jacket and pulled out what Richards described as a little black revolver. Mr. Greene was not facing the appellant but turned around when he saw the frightened look on Ms. Richards' face.

The appellant stated "I'm prepared to go to jail. I just need some money." When Ms.

3

Richards told the appellant that she only had six dollars, the appellant became angry at which time Mr. Greene offered the appellant his cellular phone. Next, the appellant asked who owned the car and demanded the keys. Ms. Richards told the appellant that the keys were in the apartment; however, they dropped from her hands. The appellant remarked "Oh, so you want to lie to me. We're all going for a little ride now."

The appellant instructed Mr. Greene to drive while he sat in the backseat holding a gun to Mr. Greene's head. Ms. Richards sat in the front passenger seat. The appellant ordered Ms. Richards to remove her watch and engagement ring. After they drove some distance, Mr. Greene urged the appellant to let them go by saying that they would deny seeing him. Mr. Greene went on to offer the car to the appellant in exchange for their release.

After some thought, the appellant released Mr. Greene and Ms. Richards and fled in the car. The victims walked back to the apartment and called the police. They described the appellant as a fit, young, black male, approximately 5'7" tall with medium-colored skin wearing a hat and black leather jacket.

The appellant was eventually arrested and charged with two counts each of especially aggravated kidnaping and aggravated robbery. At trial, Ms. Richards testified concerning her contact with the appellant. As to her certainty to the identity of the perpetrator, she stated that she could recognize the voice of the perpetrator as he had said to her "Turn around, bitch." Over defense objection, the trial court ordered the appellant to utter that statement; however, the appellant declined. Ms. Richards then stated that the phrase "I don't want to hurt anybody. All I need is some money" was spoken by the perpetrator. Again, the trial court asked the appellant to repeat the phrase. The appellant complied.

## ISSUES

### I. Motion to Suppress

The appellant's first complaint is that the trial court erred in denying his motion to suppress. In his motion, the appellant argued that his statements were taken in violation of his Miranda rights. Specifically, he maintained that the officers failed to "scrupulously honor" his invocation of his right to counsel. Within this issue, the appellant insists that his resulting confession was not knowing and voluntary.

4

An appellate court should uphold a trial court's decision on a motion to suppress, unless the evidence in the record preponderates against the finding. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. Id. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. Id. However, the application of the law to the facts found by the trial court, is a question of law which this Court reviews de novo. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

In the instant case, the trial court made its findings on the record following the suppression hearing. The trial judge concluded that the officers had acted conscientiously by having the appellant execute the advice of rights form. The judge further found that the appellant read the rights aloud and understood what he was reading. According to the Court, the re-entry into the interview room for the purpose of obtaining statistical information for the arrest ticket did not constitute a violation of the appellant's Miranda rights.

The trial court stated that it "did not find [the appellant's] testimony to be credible today." The appellant's testimony that the officers used trickery or coercion was unsupported by the evidence. The judge said that by the appellant's own admission, the appellant was fully advised of his rights and signed the advice of rights forms. Finally, the trial court found no inconsistency in the testimonies of Officer Cook and Lt. Cole. In fact, the court concluded that their testimony was consistent with the evidence that more than one person contributed to the completion of the arrest ticket.

The appellant complains that the officers violated his Miranda rights by seeking statistical information from him. We disagree. Upon the appellant's arrival at the police station, the officers sought to question him about his involvement in various robberies. The appellant was given an advice of rights form which he read aloud and executed. The officers honored the appellant's decision to invoke his rights. After the officers spoke with Carlos Malone, they placed the appellant under arrest. Officer Cook entered the interview room to obtain information for the arrest ticket.

As cited by the state, in State v. Williams, 623 S.W.2d 118, 121 (Tenn. Crim. App. 1981)

5

the Court held that <u>Miranda</u> did not prohibit an officer from asking statistical information and concluded that the disclosure of a name, age and address "is essentially a neutral act." <u>Id</u>. (citations omitted). Absent some compulsion or coercion, "defendant's statement of his place of residence cannot conflict with any constitutional guarantees of the [Fifth Amendment] privilege." <u>Id</u>. Finally, the Williams court concluded that an arrest ticket is not a "statement" under Rule 16 of the Tennessee Rules of Criminal Procedure. <u>Id</u>.

As to the presence of any compulsion, the appellant argues that his confession was not knowing and voluntary and that the officers failed to scrupulously honor his request not to speak with them. Without question, the officers had the legal obligation to honor the appellant's right to remain silent. However, the record is devoid of evidence that his resulting statements were not freely given or that the officers in any way coerced the appellant into confessing.

At the suppression hearing, the appellant testified that he had been held in the interview room for several hours and eventually chained to a chair. He adds that he was not permitted to use the restroom facilities. The record indicates that the appellant was held initially for approximately two hours once he had asserted his <u>Miranda</u> rights. However, once the interview with Malone was complete, the appellant was placed under arrest. Some time later, he made the statements that implicated him in various robberies, including the robbery and kidnaping at issue.

As the trial court found, the evidence simply does not support a claim that the resulting statements were not freely and voluntarily given. The appellant was given two opportunities to read his advice of rights form. Upon the first reading, he invoked his rights and the officers honored the invocation. The appellant then initiated the subsequent conversation which lead to the reading of the second advice of rights form. Only after reading these rights did the appellant volunteer the information which made up his statements. The appellant's claim of compulsion is unsupported by the evidence.

Finally, the appellant argues that the conflict in the testimonies of Officer Cook and Lt. Cole supports his position that his Miranda rights were not honored and that the statements were not freely given. At the hearing, Officer Cook testified that he obtained certain information for the arrest ticket and Lt. Cole testified that some of the statistical information on the arrest ticket was in his handwriting. We are not convinced that this discrepancy in the testimony supports the appellant's claims. The trial judge found no inconsistency in the two witnesses and concluded that both played

6

some role in completing the arrest ticket. As the sole judge of the credibility of the witnesses, the trial judge was in a much better position to resolve any conflicts in the testimony. Having resolved such conflicts against the appellant, we will not usurp the trial court's function.

Finding no coercion or compulsion, we conclude that the officer's request for statistical information did not constitute a statement, and therefore, did not violate the appellant's previously-invoked Miranda rights. Accordingly, this issue is without merit.

## II. Sufficiency of the Evidence

Next, the appellant contends that the evidence was insufficient to support his convictions. In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). The appellant has the burden of overcoming this presumption of guilt. Id.

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); T.R.A.P. 13(e). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984).

The indictments charging the appellant with two counts of especially aggravated kidnaping read as follows: "Thomas Lewis on May 22, 1995, in Shelby County, Tennessee . . . did unlawfully and knowingly remove Christa Richards [and Sean Greene] so as to interfere substantially with the liberty of the said Christa Richards [and Sean Greene], by use of a deadly weapon, to wit: a handgun, in violation of T.C.A. 39-13-305 . . ."

The evidence presented at trial revealed that Mr. Greene and Ms. Richards were standing beside Ms. Richards' vehicle when the appellant held them at gunpoint. The appellant eventually

7

ordered them into the vehicle and placed the gun towards Mr. Greene's head while he drove. Only upon the victims' pleas did the appellant free the victims and take the vehicle. The victims were then forced to walk some distance back to the apartment to telephone the police. The presence of the deadly weapon, the unquestionable interference with their liberty and the removal of the victims provide the elements necessary to support the appellant's convictions for especially aggravated kidnaping.

As to the aggravated robbery charges, the respective indictments stated that "Thomas Lewis on May 22, 1995, in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully, intentionally, knowingly and violently, by use of a deadly weapon, to wit: a handgun, obtain from the person of Christa Richards [and Sean Greene], a sum of money, a motor vehicle and a cellular telephone, proper goods and chattels of Christa Richards [and Sean Greene], in violation of T.C.A. 39-13-402 . . ."

The trial testimony indicated that the appellant approached the victims while standing next to Ms. Richards' vehicle. At gunpoint, he ordered them to produce their money. When he determined that the victims had no money, he asked for the keys to the vehicle. After Ms. Richards told him the keys were inside the apartment but then dropped them, the appellant became angry, uttered various phrases and ordered them into the vehicle. Once inside the vehicle, the appellant ordered Ms. Richards to give him her engagement ring and watch. He also took the cellular telephone offered to him by Mr. Greene. Finally, after releasing the victims, he drove away in their vehicle. Without question, the necessary elements of aggravated robbery have been met.

Within this issue, the appellant challenges the sufficiency of the evidence in part on the fact that the victims had difficulty in identifying him as the perpetrator of the robbery and kidnaping. However, this challenge is misplaced. While it is true that the victims' testimony as to whether the appellant was the perpetrator revealed some uncertainty, the remaining evidence supports the convictions. Further, the court gave a jury instruction on how to evaluate the eyewitness identification. Additionally, the appellant admitted in his statements to police that he had robbed the victims. This statement was corroborated by the evidence.

On appeal, the burden is on the appellant to demonstrate that the evidence was insufficient to support his convictions at trial. Here, the appellant has failed to meet his burden on any charge. This issue is without merit.

8

### III. In-Court Voice Identification

The appellant's third claim of error is that the trial court committed reversible error when it ordered him to utter various statements in court. At trial, during the testimony of Ms. Richards, the witness, responding to a question posed by the state, said that she remembered certain statements the perpetrator made to her at the time of the incident. At the request of the state, the trial court asked the appellant to repeat various phrases. When defense counsel objected, the court held a "jury out" hearing.

During this hearing, the court stated various facts of the case that supported the necessity of a voice exemplar. The court also concluded that the word "bitch" was not being offered to inflame the jury but to reflect the actual statement made by the perpetrator. Recognizing the need for the voice-identification, the trial court ordered the appellant to utter the phrase, "Turn around, bitch." Upon a return to court and in the presence of the jury, the appellant refused to utter the phrase "Turn around, bitch." When the trial court asked the witness for other statements of the perpetrator, the witness offered the phrase "I don't want to hurt anybody, I just want some money." The appellant uttered the phrase.

The defendant now complains that the forced utterance of these phrases and the jury's viewing of him refusing to utter one of the statements violated his right to remain silent. It is undisputed that an appellant in a criminal case has the constitutional right to remain silent and cannot be compelled to testify. However, "[a] defendant may be compelled to give evidence which does not have testimonial significance because such evidence is not protected by the constitutional privilege against self-incrimination." State v. Meeks, 867 S.W.2d 361, 376 (Tenn. Crim. App. 1993) (citations omitted). Citing United States v. Wade, 388 U.S. 218, 222-223 (1967), the Meeks court reiterated the well-settled principle that "the privilege against self-incrimination was not violated by compelling a defendant to speak and to utter words purportedly uttered by the assailant in order for witnesses to consider the utterances for identification purposes." Id.

The appellant contends that the statements made by him had testimonial significance; however, this Court finds that the utterances made by the appellant during the trial constituted voice exemplars. As such, the statements made by the appellant did not rise to the level of testimony and did not violate his right to remain silent. The Court would note, however, as suggested by the appellant, that when such voice exemplars became a useful or necessary part of a case, the preferred

timing of obtaining these exemplars would be prior to the trial of the matter.

In this case, we do not find that the utterances required of appellant during the trial, the nature of the utterances or the appellant's refusal to make one such utterance so prejudiced his trial as to require a reversal. Error, if any, was harmless. This issue is without merit.

## IV. Sentencing

Finally, the appellant maintains that the judge erred in sentencing him to an effective sentence of sixty (60) years. Specifically, the appellant contends that the trial court improperly considered certain enhancement factors and errantly ran the sentences consecutively.

When a challenge is made to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. There are, however, exceptions to the presumption of correctness. First, the record must demonstrate that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Second, the presumption does not apply to the legal conclusions reached by the trial court in sentencing. Third, the presumption does not apply when the determinations made by the trial court are predicated upon uncontroverted facts.

### A. Length of Sentences

Aggravated robbery, a Class B felony, carries a range of 8 to 12 years for a Standard Range I offender. Without consideration of enhancing and mitigating factors, the presumptive sentence for a Class B felony is the minimum sentence in the statutory range. Tenn. Code Ann. § 40-35-210(c).

In each of the especially aggravated kidnaping convictions, the trial judge imposed twenty-year sentences. Especially aggravated kidnaping, a Class A felony, carries a range of 15 to 25 years for a Standard Range I offender. Although the statute changed in 1995, at the time this offense, the presumptive sentence in a Class A felony was the minimum within the statutory range.

Where the trial court finds one or more enhancing but no mitigating factors, the court may sentence above the presumptive sentence within the range. Tenn. Code Ann. § 40-35-201(d). Where

10

both enhancing and mitigating factors apply, the trial court must start at the presumptive sentence and then enhance within the statutory range based on any appropriate enhancing factors and reduce the sentence within the statutory range based on any appropriate mitigating factors. Tenn. Code Ann. § 40-35-210(e).

So long as the trial court complies with the purposes and principles of the Tennessee Criminal Sentencing Reform Act of 1989 and its findings are supported by the record, the weight afforded to any enhancing and/or mitigating factors is left to the discretion of the trial court. State v. Moore, 942 S.W.2d 570 (Tenn. Crim. App. 1996).

Following a sentencing hearing, the trial court considered as enhancement factors that: the appellant has no hesitation about committing the offense when the risk to human life was high and that the offense was committed under circumstances under which the potential for bodily injury to a victim was great. Tenn. Code Ann. §§ 40-35-114(10) & (16). In addition, the trial court gave some weight, as required by statute, to the fact that the appellant released the victims. However, the court indicated that the release was not necessarily voluntary and resulted only after the victims begged to be released. The trial judge refused to consider the age of the appellant as a mitigating circumstance as the appellant was in his twenties when the incident occurred.

Initially, the Court would note, and the state concedes, that the trial court improperly considered enhancement factors (10) and (16) in the aggravated robbery convictions. As resolved in State v. Claybrooks, 910 S.W.2d 868, 872 (Tenn. Crim. App. 1994), this Court held that because these factors are inherent in the offense of aggravated robbery, they may not be used to enhance the resulting sentence. Accordingly, these sentences are reduced to the minimum eight years in each aggravated robbery conviction.

This Court has further held that enhancement factors (10) and (16) are inapplicable in especially aggravated kidnaping convictions where a deadly weapon is used. See State v. Kern, 909 S.W.2d 5 (Tenn. Crim. App. 1993). Accordingly, these sentences are similarly modified to the minimum fifteen years in each especially aggravated kidnaping conviction.

.

## B. Consecutive Sentences

The appellant also alleges that the trial court errantly imposed consecutive sentences. As stated above, the trial judge found that the appellant was a dangerous offender and imposed an

effective sentence of 60 years.  With the modifications made by this Court, the effective sentence is reduced to 46 years.

Tennessee Code Annotated Section 40-35-115 provides that "[i]f a defendant is convicted of more than one (1) criminal offense, the court shall order sentences to run consecutively or concurrently as provided by the criteria in this section."  Tenn. Code Ann. § 40-35-115(a).  "The Court may order sentences to run consecutively if the court finds by a preponderance of the evidence that: . . . (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high."  Tenn. Code Ann. § 40-35-115(b)(4).

The trial court concluded that the appellant should be classified as a "dangerous offender."  Citing the statute, the court reasoned that:

> These two victims were minding their own businesses in the evening, standing outside the apartment building in which one of them lived, talking, not harming a soul, minding their own business, when Mr. Lewis elected to approach them, stick a gun in their face, rob them, force them into the car, kept the gun at the head of, I believe it was, the male victim that was driving as they went down, if I'm not mistaken. . . .
> When people are forced into a car at gunpoint and are made to start driving and they're heading toward desolate areas, it spells trouble.  And I think these two victims in this case were lucky to be alive today to tell the tale.
> And for an individual to have committed the crimes that Mr. Lewis committed in the manner in which they were committed, in my judgment there can be no question that he is a dangerous offender as contemplated in the statute.

In State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995), the Tennessee Supreme Court delineated the following requirements for imposing consecutive sentences when the defendant is classified as a "dangerous offender":

> (1) Proof that an offender's behavior indicated little or no regard for human life and no hesitation about committing a crime when the risk to human life was high.

> (2) The proof must establish that the terms imposed are reasonably related to the severity of the offenses committed.

> (3) An extended sentence is necessary to protect the public against further criminal conduct by the defendant.

Id. at 938-39.

The testimony at trial indicates that the appellant approached the victims with a weapon, robbed them at gunpoint and forced them into one of the victim's car.  Holding the gun to Mr.

Greene's head, the appellant forced Greene to drive away. While in the car, the appellant demanded Ms. Richards' engagement ring and her watch. Only after pleading with the appellant were the victims released. Without question, the appellant's behavior indicated little or no regard for human life and no hesitation about committing a crime when the risk to human life was high. We agree that the appellant is a dangerous offender.

The appellant's decision to rob the victims was taken a step further when he also decided to kidnap them. The robbery itself placed the victims in harms way; however, when the appellant unnecessarily kidnaped them, the danger to them was increased exponentially. As such, the consecutive sentences reasonably relate to the offenses committed.

Finally, based on the proof in the record, this Court finds that an extended sentence is necessary to protect society from the appellant. As stated above, the appellant shows little regard for the sanctity of human life. His dangerousness warrant the extended sentence imposed in this case. This issue is similarly without merit.

## CONCLUSION

For the foregoing reasons, this Court affirms the appellant's convictions. The sentences are modified as set forth herein.

ROBERT W. WEDEMEYER,
Special Judge

CONCUR:

JOE G. RILEY, Judge

CURWOOD WITT, Judge

13