# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## DECEMBER SESSION, 1999

FILED

March 14, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. E1999-00848-CCA-R3-CD** |
| Appellee, | ) | |
| | ) | |
| | ) | **GREENE COUNTY** |
| **VS.** | ) | |
| | ) | **HON. JAMES E. BECKNER** |
| **JEFFERY RAY JENNINGS,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal - Aggravated Robbery)** |

FOR THE APPELLANT:

WILLIAM LOUIS RICKER
250 West Depot Street
Greeneville, TN 37743

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General and Reporter

ELIZABETH T. RYAN
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

C. BERKELEY BELL
District Attorney General

CECIL C. MILLS
Assistant Attorney General
109 S. Main St.
Greeneville, TN 37743

OPINION FILED _____

AFFIRMED; SENTENCE MODIFIED

JERRY L. SMITH, JUDGE

**OPINION**

A Greene County jury convicted the appellant, Jeffery Ray Jennings, of one (1) count of aggravated robbery. The trial court sentenced the appellant as a Range I, Standard Offender, to twelve (12) years incarceration. On appeal, the appellant raises the following issues for this Court's consideration:

(1) whether the trial court erred in denying the appellant's motion to suppress a pretrial photographic lineup;

(2) whether the evidence is sufficient to sustain his conviction for aggravated robbery; and

(3) whether the trial court imposed an excessive sentence.

After thoroughly reviewing the record before this Court, we conclude that there is no reversible error. Therefore, we affirm the judgment of the trial court.

**FACTS**

On January 3, 1999, Lori Smith was working as an employee of Quick Stop Market in Greene County, Tennessee. At approximately 9:40 p.m., she was busy stocking the cooler when she heard the store door open. She walked over to the register where a young man was standing. The man demanded the money from the cash register while brandishing a gun. Smith obliged, and the man left on foot with approximately $260. Because the store was equipped with a video recording system, the incident was recorded on video tape.

Smith alerted the police, and Officer Steve Spano with the Greeneville Police Department responded to the call. After ensuring that Smith was safe, Spano attempted to locate the robbery perpetrator. While patrolling the neighboring apartment buildings, Spano saw the appellant exiting an apartment. Spano recognized the appellant as they were acquainted. The officer subsequently returned to the store to continue his

investigation. The next day Spano viewed the videotape of the crime. Upon watching the video, Officer Spano concluded the appellant was the perpetrator of the robbery.

Smith described the perpetrator as approximately 18 to 23 years of age, wearing a black toboggan, a black jacket and baggy jeans. She also observed that the robber had a mustache. Approximately one week after the incident, Detective Don Jones presented Smith with a photographic lineup. Smith immediately identified the appellant as the robber from the lineup and subsequently identified the appellant at trial as the perpetrator.

The appellant presented an alibi defense at trial. Numerous family members and friends testified that the appellant was at home during the time of the robbery. The appellant also testified in his own behalf. He stated that, on January 3, he went to bed around 9:00 p.m. and slept until 1:00 p.m. the next day. He denied any involvement in the robbery at the Quick Stop Market.

The jury found the appellant guilty of aggravated robbery, and the trial court sentenced him as a Range I offender to twelve (12) years incarceration.[1] From his conviction and sentence, the appellant now brings this appeal as of right.

## MOTION TO SUPPRESS PHOTOGRAPHIC LINEUP

The appellant contends that the trial court erred in denying his motion to suppress the pretrial photographic lineup. He alleges that the photographic lineup procedure was unduly suggestive because the detective conducting the lineup informed Smith that a suspect was in the photographic array. He further claims that the witness' identification was unreliable because her initial description of the robber's height and weight was dissimilar to the appellant's actual height and weight. Therefore, he argues that the pretrial identification should have been suppressed at trial.

---

[1] The appellant was also charged with an attempted aggravated robbery which occurred on January 9. The jury acquitted the appellant of that charge.

Detective Don Jones of the Greeneville Police Department testified at the suppression hearing that on January 10, he presented a photographic array to Lori Smith so that she might identify the man who robbed her on January 3. Jones testified that Smith immediately identified the perpetrator in photo number six by stating, "[t]hat's him. I recognize his cheeks." Jones advised that the appellant was pictured in photo number six. Jones testified that he did not point out the appellant's photo to Smith nor did he inform Smith that a suspect's photo was in the array.

The trial court determined that the photographic lineup procedure was not improperly suggestive. The court found that the detective did not inform the victim that a suspect was pictured in the array. In addition, the trial court found that the array did not suggest one photo to the exclusion of the others. As a result, the trial court denied the appellant's motion to suppress.

In reviewing a trial court's denial of a motion to suppress, this Court is bound by the trial court's findings of fact unless the evidence preponderates otherwise. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997). However, the law as applied to those facts is subject to *de novo* review. Id. The appellant bears the burden of demonstrating that the evidence preponderates against the trial court's findings. State v. Odom, 928 S.W.2d 18, 22-23 (Tenn. 1996).

Out-of-court eyewitness identifications as well as in-court identifications may be challenged on constitutional grounds. A defendant's right to due process is violated if, under the totality of the circumstances, "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); *see also* State v. Strickland, 885 S.W.2d 85, 88 (Tenn. Crim. App. 1993). "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." Neil v. Biggers, 409

U.S. 188, 198, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). Examples of impermissibly suggestive identification procedures include:

> that all in the lineup but the suspect were known to the identifying witness, that the other participants in a lineup were grossly dissimilar in appearance to the suspect, that only the suspect was required to wear distinctive clothing which the culprit allegedly wore, that the witness is told by the police that they have caught the culprit after which the defendant is brought before the witness alone or is viewed in jail, that the suspect is pointed out before or during a lineup, and that the participants in the lineup are asked to try on an article of clothing which fits only the suspect.

United States v. Wade, 388 U.S. 218, 233, 87 S.Ct. 1926, 1935-36, 18 L.Ed.2d 1149 (1967) (footnotes omitted).

Although an identification procedure was unnecessarily suggestive, the ensuing identifications may be admissible at trial if the identification was nonetheless reliable. Neil v. Biggers, 409 U.S. at 199-201, 93 S.Ct. at 382-83. The factors to be considered in determining the reliability of the identification include:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Id. at 199, 93 S.Ct at 382; see State v. Edwards, 868 S.W.2d 682, 695 (Tenn. Crim. App. 1993).

In this case, we agree with the trial court that the photographic lineup procedure was not unduly suggestive. The photographic array depicted six (6) young, white males with similar facial characteristics, hair color and hair length. Moreover, contrary to the appellant's assertion, there is no evidence that the detective conducting the photographic lineup suggested that the appellant was a suspect or that he informed Smith that a suspect was in the array.

With regard to the appellant's contention that the witness' identification of the appellant was unreliable, and thus inadmissible in evidence, any discrepancy between Smith's initial description of the perpetrator and the appellant's appearance affects the weight of the evidence, not its admissibility. Indeed, differences in the appellant's height

and weight from the victim's description of the robber's height and weight should provide defense counsel with fertile grounds for cross-examination at trial. However, such differences do not render the victim's pretrial identification of the appellant inadmissible.

The photographic identification procedure was not unduly suggestive and, therefore, did not violate the appellant's due process rights. Thus, the trial court did not err in denying the appellant's motion to suppress. This issue has no merit.

## SUFFICIENCY OF THE EVIDENCE

The appellant argues that the evidence is insufficient to sustain his conviction for aggravated robbery. He points to numerous alibi witnesses who testified at trial that he was at home when the crime occurred. Thus, he asserts that the state failed to prove beyond a reasonable doubt that he was the perpetrator of the crime.

When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge according to certain well-settled principles. Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). On appeal, the state is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." State v. Matthews, 805 S.W.2d at 779.

A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in the testimony in favor of the state. State

v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d at 75. Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id.

Aggravated robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" that is "[a]ccomplished with a deadly weapon . . ." Tenn. Code Ann. §§ 39-13-401, 39-13-402(a)(1). The state's proof at trial showed that the appellant entered the Quick Stop Market, brandished a weapon and demanded the money from the cash register. Smith complied with his demands, out of fear she would be shot if she did not, and the appellant left the store with $260.

Smith provided the police with an initial description of the suspect and subsequently identified the appellant as the perpetrator of the crime from a photographic lineup and at trial. Additionally, Officer Spano, an acquaintance of the appellant, recognized the appellant from the video tape of the robbery.

Although the appellant presented numerous alibi witnesses at trial, the jury, by its verdict, clearly accredited the testimony of the state's witnesses. This Court is not free to overturn the jury's determination in this regard.

After viewing the evidence in the light most favorable to the state, we conclude that the state presented sufficient evidence for a rational trier of fact to convict the appellant of aggravated robbery. This issue has no merit.

### SENTENCING

In his final issue, the appellant claims that the trial court imposed an excessive sentence. He contends that the trial court failed to consider a properly applicable

mitigating factor, and that, as a result, the court erred in failing to sentence him to the minimum sentence within the range.

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tenn. Code Ann. § 40-35-210, to consider the following factors in sentencing:

(1) [t]he evidence, if any, received at the trial and the sentencing hearing;

(2) [t]he presentence report;

(3) [t]he principles of sentencing and arguments as to sentencing alternatives;

(4) [t]he nature and characteristics of the criminal conduct involved;

(5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and

(6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

Under the 1989 Sentencing Act, the presumptive sentence is the minimum within the applicable range if no mitigating or enhancement factors for sentencing are present. Tenn. Code Ann. § 40-35-210(c); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). If such factors do exist, a trial court should start at the presumptive sentence, enhance the sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute, as the weight given to each

factor is left to the discretion of the trial court as long as its findings are supported by the record. State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995); *see* Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments.

In imposing sentence, the trial court determined that two (2) enhancement factors should apply: (1) that the appellant has a previous criminal history, Tenn. Code Ann. § 40-35-114(1);[2] and (2) the appellant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community, Tenn. Code Ann. § 40-35-114(8). The trial court rejected the appellant's proposed mitigating factor that he lacked substantial judgment in committing the offense due to his age. Tenn. Code Ann. § 40-35-113(6). The court announced that it was giving a "great deal of weight" to the enhancement factors and, as a result, sentenced the appellant to twelve (12) years, the maximum for a Class B felony.

The appellant does not contest the applicability of the enhancement factors considered by the trial court,[3] but as noted, alleges that the trial court erred in failing to consider that he lacked substantial judgment due to his youthful age of seventeen (17) at the time the offense was committed. *See* Tenn. Code Ann. § 40-35-113(6). However, a defendant's chronological age is not determinative with regard to this mitigating factor. "In determining whether this factor is to be applied, courts should consider the concept of youth in context, i.e., the defendant's age, education, maturity, experience, mental capacity or development, and any other pertinent circumstance tending to demonstrate the

---

[2] The trial court considered this factor "together with" Tennessee Code Annotated section 40-35-114(20), "[t]he defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult."

[3] This Court notes that the trial court erred in considering Tennessee Code Annotated section 40-35-114(1) as an enhancement factor because all of his prior offenses were committed as a juvenile. This Court has held that, as a result of the addition of Tennessee Code Annotated section 40-35-114(20), "factor (20) became the exclusive factor for enhancing a sentence based on a defendant's juvenile record." State v. Brent Brown, C.C.A. No. 02C01-9710-CC-00419, 1998 Tenn. Crim. App. LEXIS 1112, at *3, Hardeman County (Tenn. Crim. App. filed October 26, 1998, at Jackson). Nevertheless, because the appellant committed several offenses as a juvenile which would have been a felony if committed by an adult, the trial court could properly enhance the appellant's sentence based upon his prior "juvenile felony" record. Tenn. Code Ann. § 40-35-114(20).

defendant's ability or inability to appreciate the nature of his conduct." State v. Adams, 864 S.W.2d 31, 33 (Tenn. 1993).

The trial court considered this mitigating factor, but rejected it on the following grounds:

> if he were younger than 17, or if he had less than the record and did not have the previous violations and attempt to rehabilitate and failures time after time to do so, did not have such extensive experience with law enforcement and violations of laws and adjudications against him, it certainly would be incumbent upon the Court to consider No. 6, but given all those factors I think without any question it's not a mitigating factor in this case under [40-35-113].

We agree. Although the appellant was only seventeen (17) at the time this offense was committed, the record indicates that the appellant is well-acquainted with the criminal justice system, as well as with the consequences of violating the law. We do not believe that the record supports the appellant's assertion that he lacked substantial judgment due to his youth. The trial court properly rejected this mitigating factor.

The state points out that the trial court mistakenly determined that the presumptive sentence for a Class B felony was the mid-point of the range, rather than the minimum in the range as mandated by Tenn. Code Ann. § 40-35-210(c). As a result, the trial court erroneously began with a sentence of ten (10) years and enhanced that sentence to the maximum of twelve (12) years. A reading of the sentencing hearing transcript demonstrates that the trial court gave substantial weight to the enhancement factors it considered. The court stated that these factors are "very strong enhancement factors that carry a great deal of weight." In light of the appellant's lengthy criminal history as a juvenile and repeated failure to comply with the conditions of juvenile probation, we agree with the trial court that the enhancement factors are entitled to considerable weight. It further appears that the trial court determined that the enhancement factors warranted increasing the appellant's sentence two years beyond the presumptive minimum. We agree that enhancement of appellant's sentence by two years beyond the presumptive sentence is appropriate, however beginning at the actual presumptive sentence for a Class B felony,

-10-

eight years, and enhancing two years leads us to a sentence of ten years. The appellant's sentence is therefore modified to ten years in the Department of Correction.

## CONCLUSION

After reviewing the record before this Court, we conclude that the record contains no reversible error, however, the appellant's sentence is modified as stated above.

_____
JERRY L. SMITH, JUDGE

CONCUR:

_____
JOSEPH M. TIPTON, JUDGE

_____
DAVID H. WELLES, JUDGE