IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 9, 2015
Remanded by the Supreme Court November 22, 2016

**STATE OF TENNESSEE v. CHRISTOPHER WILSON**

**Interlocutory Appeal from the Criminal Court for Shelby County**
**No. 1400109     W. Mark Ward, Judge**

_____

**No. W2015-00699-CCA-R9-CD  -  Filed May 24, 2017**

_____

The Defendant, Christopher Wilson, filed a Rule 9 interlocutory appeal seeking our review of the trial court's denial of his motion to suppress evidence.  The Defendant filed a motion to suppress the results of his blood alcohol test based upon a violation of *Missouri v. McNeely*, 133 S. Ct. 1552 (2013).  The trial court conducted an evidentiary hearing and found that a "good faith exception" to the Defendant's forced blood draw existed and denied the Defendant's motion.  The Defendant filed an application for an interlocutory appeal, which the trial court granted.  On appeal, the Defendant contended that the trial court erred when it denied the Defendant's motion to suppress based upon a "good faith exception" to the exclusionary rule.  After review, we concluded that the trial court erred when it denied the Defendant's motion to suppress because, at that time, there was not a good faith exception to the exclusionary rule.  *State v. Christopher Wilson*, W2015-00699-CCA-R9-CD, 2016 WL 1627145, at *1 (Tenn. Crim. App., at Jackson, April 21, 2016).  On November 22, 2016, the Tennessee Supreme Court granted Defendant's application for permission to appeal and remanded the case to this court for reconsideration in light of the supreme court's recent opinion in *State v. Reynolds*, 504 S.W.3d 283 (Tenn. 2016).  Upon reconsideration in light of *Reynolds*, we conclude that the officer acted with reasonable good-faith reliance on binding precedent in effect at the time.  Accordingly, we reinstate and affirm the trial court's denial of the Defendant's motion to suppress.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which ALAN E. GLENN, J., joined.  THOMAS T. WOODALL, P.J., concurs in results only in a separate opinion.

Graham Cox, Collierville, Tennessee, for the appellant, Christopher Wilson.

Herbert H. Slatery III, Attorney General and Reporter; Rachel E. Willis, Senior Counsel; Amy P. Weirich, District Attorney General; and Michael R. McCusker, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
## I. Facts

This case arises from a traffic stop in Collierville, Tennessee. After observing a traffic violation, Collierville Police Lieutenant John Banks conducted a traffic stop resulting in the Defendant's arrest for driving while under the influence. A search of the Defendant's vehicle incident to his arrest revealed marijuana and marijuana cigarettes. The Defendant refused to consent to a breath or blood test and the police officer ordered blood to be drawn despite the refusal. As a result of this stop, a Shelby County grand jury indicted the Defendant for possession of marijuana with the intent to sell, possession of marijuana with the intent to deliver, driving while under the influence of an intoxicant, driving while blood alcohol concentration was more than .08%, driving while under the influence of marijuana, driving while under the influence of an intoxicant and marijuana combined, and reckless driving. The indictments also reflected that the Defendant had prior convictions on March 11, 2008, and January 24, 1995, for driving while under the influence.

The Defendant filed a motion to suppress the results of the blood alcohol concentration (BAC) test. The Defendant, relying on *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), asserted that the forced blood draw taken absent a warrant, valid consent, or exigent circumstances violated his Fourth Amendment right against an unreasonable search and seizure. The State responded that the warrantless blood draw was justified by exigent circumstances and by the implied consent statute. The State later amended its response contending that the "Good Faith Exception to the Exclusionary Rule" should apply in this case.

At the suppression hearing on the Defendant's motion, the parties presented the following evidence: John Banks, a Collierville Police Department lieutenant, testified that, on June 17, 2012, at around 6:39 p.m., he observed the Defendant driving a white Ford pickup traveling westbound on Maynard Way. Lieutenant Banks stated that he knew the Defendant from a prior DUI arrest and, also, the two men had previously worked together at an electrical company. Lieutenant Banks recalled that he was directly behind the Defendant's vehicle, which was stopped at a traffic signal. Lieutenant Banks testified that the Defendant made a wide right turn from the right-hand traffic lane on Maynard Way into the left-hand northbound traffic lane of Byhalia Road in violation of

Tennessee Code Annotated section 55-8-140. Lieutenant Banks conducted a traffic stop of the Defendant based upon this alleged violation.

Lieutenant Banks testified that he approached the vehicle and noticed a "very strong" odor of intoxicant on the Defendant's breath and coming from inside the vehicle. Lieutenant Banks said that the Defendant's eyes were bloodshot and glassy. He noticed that the Defendant mumbled when he spoke, unlike his normal speech. Based upon his observations, Lieutenant Banks believed the Defendant was under the influence of an intoxicant and further investigation was necessary. Following the standardized field sobriety testing, the Defendant was placed under arrest for DUI, and Lieutenant Banks searched the Defendant's vehicle incident to the arrest.

Lieutenant Banks testified that, during the search of the vehicle, he found a cooler on the front passenger floorboard with five sixteen-ounce cans of Bud-Light beer and sixteen twelve-ounce bottles of Bud-Light beer. Behind the driver's seat, on the floorboard, was an unopened eighteen-pack of Bud-Light beer. Lieutenant Banks stated that he did not find any open containers of alcohol while searching the vehicle. While inside the vehicle, Lieutenant Banks detected an odor of marijuana, and he found in the center console a clear plastic bag containing "loose, green-leafy material." The material tested positive for THC. The weight of the marijuana was 28.7 grams. Along with the plastic bag of marijuana, Lieutenant Banks found a 1.1 gram unburned marijuana cigarette and a .2 gram partially burned marijuana cigarette, which both tested positive for THC.

Lieutenant Banks testified that, at the time of the arrest, he was concerned with the dissipation of alcohol and marijuana in the Defendant's system. Lieutenant Banks advised the Defendant of the implied consent law in relation to taking a blood or a breath test. The Defendant refused to consent to either a blood draw or breath test. The Defendant signed the implied consent form indicating his refusal at 7:39 p.m. Lieutenant Banks identified an alcohol toxicology request that he filled out during the Defendant's arrest on June 17, 2012. The form indicated that the Defendant's blood was drawn at 7:45 p.m., one hour and six minutes after the initial traffic stop. Lieutenant Banks explained that it was his "understanding" that the "policy" was to collect a mandatory blood draw because of the Defendant's March 11, 2008 DUI conviction. Lieutenant Banks said that it was not "common practice" for officers to obtain search warrants in the case of a mandatory blood draw and that he had never done so personally.

Lieutenant Banks testified that seeking a search warrant in this case would have caused an additional delay in obtaining the Defendant's blood and, therefore, a less accurate test result as to the Defendant's blood alcohol level. He estimated that the additional thirty to forty-five minutes would have caused him to "lose" evidence.

3

Lieutenant Banks said that Collierville does not have a "twenty-four hour Magistrate." Officers must seek the "actual Judge" and, because the Defendant's traffic stop and arrest occurred on a Sunday afternoon, Lieutenant Banks would have had to first locate the judge.

On cross-examination Lieutenant Banks testified that he drew the Defendant's blood because of his reliance on statutes relating to DUI second offense drivers. He added that he was also concerned with the dissipation of the alcohol in the blood. He agreed that his concern over the dissipation of alcohol was not included in any of his reports but stated that "it is always a concern on any DUI arrest." He confirmed that he did not attempt to get a warrant.

Following the hearing, the trial court issued an order denying the Defendant's motion to suppress because "the officer was clearly acting under a good faith belief that he was abiding by the law and not violating any rights of the defendant." It is from this judgment that the Defendant appeals.

## II. Analysis

The Defendant asserted that the trial court erred in denying his motion to suppress because there was no search warrant, exigent circumstances, or consent to the blood draw. The Defendant further contended that the police officer's misunderstanding of the law did not justify the forced blood draw. The State conceded that the trial court improperly relied on a "good faith exception" but asked this Court to defer ruling pending the Tennessee Supreme Court's ruling in *State v. Corrin Kathleen Reynolds*, No. E2013-02309-CCA-R9-CD, 2014 WL 5840567 (Tenn. Crim. App., at Knoxville, Nov. 12, 2014), *perm. app. granted* (Tenn. March 16, 2015).

On November 3, 2016, the Tennessee Supreme Court issued its opinion in *Reynolds*, holding, in relevant part, that the good faith exception applies as an exception to the exclusionary rule in cases where binding appellate precedent specifically authorizes a police practice and the police adhere to this governing law. *Reynolds*, 504 S.W.3d at 312. Thereafter, the supreme court remanded this case to us for reconsideration in light of their ruling regarding the good faith exception to the exclusionary rule.

The Defendant's blood was taken pursuant to Tennessee Code Annotated section 55-10-406(5)(B) (2014), which provides in pertinent part that:

> If a law enforcement officer has probable cause to believe that the driver of
> a motor vehicle has committed [vehicular homicide], [aggravated vehicular

4

homicide] or [the offense of driving under the influence], and has a prior conviction of [vehicular homicide], [aggravated vehicular homicide] or [driving under the influence], the officer shall cause the driver to be tested for the purpose of determining the alcohol or drug content of the driver's blood. The test shall be performed in accordance with the procedure set forth in this section and shall be performed regardless of whether the driver does or does not consent to the test.

"[T]he physical intrusion occasioned by a blood draw 'infringes an expectation of privacy," and the chemical analysis of blood is also an invasion of an individual's privacy interests. *State v. Scarborough*, 201 S.W.3d 607, 616 (Tenn. 2006) (quoting *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 616 (1989)). "Such an invasion of bodily integrity implicates an individual's 'most personal and deep-rooted expectations of privacy." *Missouri v. McNeely*, 133 S. Ct. 1552, 1558 (2013) (quoting *Winston v. Lee*, 470 U.S. 753, 760 (1985)). Accordingly, the blood of the accused cannot be drawn or analyzed unless the search is a reasonable one under the Fourth Amendment. *Scarborough*, 201 S.W.3d at 616; *see Schmerber v. California*, 384 U.S. 757, 767 (1966). A warrantless search is presumptively unreasonable, and "evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. Crim. App. 1997). One such exception is a search conducted under exigent circumstances to prevent the imminent destruction of evidence. *State v. Talley*, 307 S.W.3d 723, 729 (Tenn. 2010). Another is consent. *Id.*

It is uncontested that the Defendant did not give consent for the blood draw and both parties agree that exigent circumstances did not exist to justify the blood draw. The trial court also explicitly found that exigent circumstances did not exist. In its order granting the Defendant's motion to suppress, the trial court considered federal law regarding a good faith exception to the warrant requirement and ultimately determined that "[t]o suppress the evidence in the context of this case serves no significant purpose."

The stop at issue in this case occurred on June 17, 2012. At that time, the prevailing law relevant to this issue was *Schmerber v. California*. In *Schmerber*, the Supreme Court applied the totality of the circumstances test in the context of a drunk-driving case and upheld a warrantless blood draw based on the exigencies of the situation. The case presented a defendant who was involved in a car accident and arrested while at a hospital receiving treatment for injuries sustained in that accident. *Schmerber*, 384 U.S. at 758. The Court, recognizing that alcohol dissipates from the body shortly after drinking stops, reasoned that "[t]he officer might reasonably have believed that he was confronted with an emergency, in which the delay necessary to

5

obtain a warrant, under the circumstances, threatened the destruction of evidence[.]" *Id.* at 770 (internal quotation marks and citations omitted). The Court noted that "[p]articularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant." *Id.* at 770-71. Thus, the Court concluded that the warrantless blood draw was justified.

Many courts, including those in Tennessee, interpreted *Schmerber* broadly as establishing that because blood alcohol content begins to diminish shortly after drinking stops, a compulsory breath or blood test, taken with or without the consent of the donor, is permissible under the exigent circumstances exception to the warrant requirement. *See, e.g., State v. Humphreys*, 70 S.W.3d 752, 760-61 (Tenn. Crim. App. 2001) ("Based upon the fact that evidence of blood alcohol content begins to diminish shortly after drinking stops, a compulsory breath or blood test, taken with or without the consent of the donor, falls within the exigent circumstances exception to the warrant requirement."); *State v. Michael A. Janosky*, No. M1999-02574-CCA-R3-CD, 2000 WL 1449367, at *5 (Tenn. Crim. App. 2000) (relying in part on "the exigent circumstances established by the nature of the evidence in cases involving intoxicated motorists" to justify a warrantless blood draw).

In 2013, the United States Supreme Court clarified that the "natural metabolization of alcohol in the bloodstream" does not create a per se exigency "that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases." *Missouri v. McNeely*, 133 S. Ct. 1552, 1556 (2013). Rather, the Court held, "consistent with general Fourth Amendment principles, that exigency in this context must be determined case by case based on the totality of the circumstances." *Id.*

The stop in this case occurred before the Supreme Court's ruling in *McNeely* and while *Schmerber* was still the prevailing law. We conclude that Lieutenant Banks' obtaining the Defendant's blood without the Defendant's consent was a practice authorized by binding appellate precedent at the time it occurred. Lieutenant Banks relied on police policy regarding mandatory blood draws, and that police policy reflected Tennessee courts' interpretation of *Schmerber*, the binding appellate precedent. We agree with the trial court's finding that the officer "was clearly acting under a good faith belief that he was abiding by the law and not violating any rights of the defendant." Accordingly, we affirm the trial court's denial of the Defendant's motion to suppress.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgment and remand this case for further proceedings consistent with this opinion.

_____
ROBERT W. WEDEMEYER, JUDGE