## IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
(HEARD AT COOKEVILLE)

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ( | **FOR PUBLICATION** |
| | ( | |
| Plaintiff-Appellee, | ( | **Filed: November 24, 1997** |
| | ( | |
| | ( | |
| v. | ( | Coffee Criminal |
| | ( | |
| | ( | Hon. Gerald L. Ewell, Sr., |
| WAYNE LEE YEARGAN, | ( | Judge |
| | ( | |
| Defendant-Appellant. | | No. 01S01-9604-CC-00080 |

**FILED**

**November 24, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

For Plaintiff-Appellee:

John Knox Walkup
Attorney General & Reporter
Nashville, Tennessee

Daryl J. Brand
Senior Counsel
Nashville, Tennessee

Clinton J. Morgan
Counsel for the State
Nashville, Nashville, Tennessee

Kimbra R. Spann
Assistant Attorney General
Nashville, Tennessee

C. Michael Layne
District Attorney General
Manchester, Tennessee

Kenneth Shelton
Assistant District Attorney General
Manchester, Tennessee

For Defendant-Appellant:

Donald E. Dawson
Bruce, Weathers, Corley,
    Dughman and Lyle
Nashville, Tennessee

## O P I N I O N

AFFIRMED                                                         DROWOTA, J.

The certified question of law[1] presented in this appeal is whether the state or federal constitutional right to be free from unreasonable seizures was violated when the motor vehicle which the defendant was operating was stopped by a city police officer, who six months earlier, had arrested the defendant for driving under the influence of an intoxicant and had been present in court when the defendant was convicted of that offense and his driver's license revoked for one year.

The trial court denied the defendant's motion to suppress the evidence of the defendant's intoxication obtained during the stop, and the Court of Criminal Appeals affirmed the trial court's decision. Because we conclude that the officer's decision to stop was based upon reasonable suspicion supported by specific and articulable facts that the defendant was driving on a revoked license, the judgment of the Court of Criminal Appeals is affirmed.[2]

## FACTUAL BACKGROUND

On Thursday, January 28, 1993, at approximately 2:20 p.m., Tullahoma Police Officer Jason Ferrell observed the defendant, Wayne Lee Yeargan, driving a pickup truck on a public street in Tullahoma. Previously, Officer Ferrell had

---

[1]Rule 37(b)(2)(i), Tenn. R. Crim. P., provides in pertinent part as follows:
    (b) An appeal lies from any order or judgment in a criminal proceeding where the law provides for such appeal, and from any judgment of conviction: (2) Upon a plea of guilty or nolo contendere if: (i) Defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case. . . .

[2]Oral arguments were heard in this case in Cookeville, Putnam County, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

arrested the defendant for driving under the influence of an intoxicant and had

been present in the general sessions court approximately six months earlier, on

July 2, 1992, when the defendant pleaded guilty to the offense and had his

driver's license revoked for one year from the date of the judgment.[3]

When the officer began following the defendant's truck, Yeargan, according

to the officer's testimony, "sped up some, he wasn't going at a high rate of speed,

but he accelerated." In the officer's view, Yeargan "attempted to put some traffic

between us." The defendant then drove into the parking lot of Ruby's Lounge, a

local bar. The officer followed and put on his blue lights. The defendant parked

and got out of his truck. The officer asked to see his driver's license. Yeargan

produced a restricted license issued pursuant to a court order which permitted him

to drive "in Coffee County only as necessary to complete job tasks" between the

hours of 7 a.m. and 7 p.m. The defendant's employment was listed on the order

granting the restricted license as farming and "rental property owner." The officer

testified that when he asked Yeargan why he had driven to the bar, the defendant

replied that he "had come to the bar to meet a guy about a cow." Based on his

observations and a field sobriety test, the officer concluded that the defendant was

under the influence of an intoxicant and arrested him for driving under the

influence and driving on a revoked license.

The defendant moved to suppress the evidence obtained as a result of the

---

[3]The defendant was also fined $250 and sentenced to 11 months and 29 days in jail, which was suspended upon service of the 48 hour mandatory period of incarceration.

stop, arguing that the officer did not have reasonable suspicion to believe a crime had been committed when he made the stop because the officer knew of the procedure for obtaining a restricted license and had no reason to believe that the defendant was operating outside the scope of his driving privilege. Testifying at the suppression hearing, the police officer acknowledged that he was aware of the availability of restricted licenses for driving offenders. However, the officer testified it would have taken about 15 minutes for the police radio operator to determine the status of the defendant's license before the stop.

Upon consideration of the proof, the trial court denied the defendant's motion to suppress. Thereafter, the defendant pleaded guilty to driving under the influence of an intoxicant, second offense,[4] and driving a motor vehicle with a revoked driver's license,[5] but reserved the right to appeal a certified question of law challenging the constitutionality[6] of the traffic stop leading to his arrest and subsequent convictions. The Court of Criminal Appeals affirmed the trial court's denial of the motion to suppress, finding that "a prudent officer could reasonably have believed that the appellant was driving on a revoked license" and holding that the officer had "probable cause to conduct an investigative stop." In reaching that conclusion, the Court of Criminal Appeals relied upon Terry v. Ohio, 392 U.S.

---

[4]Tenn. Code Ann. § 55-10-401 (1993).

[5]Tenn. Code Ann. § 55-50-504 (1993).

[6]We are aware that Tenn. Code Ann. § 40-7-103(b) (Supp. 1996), provides that unless probable cause exists, only members of the Tennessee highway patrol have the authority to stop a motor vehicle for the sole purpose of examining or checking the operator license of the driver of the vehicle. However, since the defendant did not reserve for appeal the statutory legality of the stop, the effect of that statute is not at issue in this appeal.

1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968) and State v. Watkins, 827 S.W.2d 293 (Tenn. 1992).   Thereafter, we granted the defendant permission to appeal and for the reasons that follow, now affirm the decision of the trial court and Court of Criminal Appeals.

## STANDARD OF REVIEW

This Court recently clarified the standard of review under which a trial court's findings of fact on suppression issues are to be reviewed:

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact.  The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence.  So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld.  In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.  We also note that this standard of review is consistent with Tenn. R. App. P. 13(d), which provides that in civil cases, findings of fact by a trial court are presumed correct "unless the preponderance of the evidence is otherwise."  Hereafter, the proper standard to be applied in reviewing suppression issues is the "preponderance of the evidence" standard.

State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).  The application of the law to the facts found by the trial court, however, is a question of law which this Court reviews de novo.  Beare Co. v. Tennessee Dept. of Revenue, 858 S.W.2d 906, 907 (Tenn. 1993).  We apply these standards to resolve the issue in this appeal.

## REASONABLE SUSPICION

In this Court, the defendant contends that the investigatory stop was

unconstitutional because the officer did not have reasonable suspicion, supported by specific and articulable facts, to believe that the defendant was violating the law.  In support of his claim, the defendant argues that even though the officer knew the defendant's license had been revoked six months earlier, the officer was also aware of the availability of restricted licenses, and therefore, had no reason to believe the defendant was violating the law by operating an automobile.  The State responds that given the totality of the information known to the officer, the stop was based upon reasonable suspicion.  The State also maintains that the officer was not required to check the status of the defendant's license before initiating the stop.

We begin our analysis of this issue with the text of the Fourth Amendment[7] to the United States Constitution which provides:

> **Unreasonable searches and seizures. -** The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly  describing the place to be searched, and the persons or things to be seized.

Similarly, Article 1, Section 7 of the Constitution of Tennessee guarantees

> that the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search

---

[7]The Fourth Amendment is applicable to the states through the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961).

suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

The purpose of the prohibition against unreasonable searches and seizures under the Fourth Amendment is to "safeguard the privacy and security of individuals against arbitrary invasions of government officials." Camara v. Municipal Court, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967). "[A]rticle I, section 7 is identical in intent and purpose with the Fourth Amendment." State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997), quoting Sneed v. State, 221 Tenn. 6, 13, 423 S.W.2d 857, 860 (1968).

Consequently, under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971); State v. Bartram, 925 S.W.2d 227, 229-30 (Tenn. 1996).

Though it was a temporary detention for a limited purpose, the stop of the defendant's vehicle in this case, without question, constitutes a seizure and implicates the protection of both the state and federal constitutions. Whren v. United States, ___ U.S. ____,___, 116 S. Ct. 1769, 1772, ___ L.Ed.2d ___

(1996); Delaware v. Prouse, 440 U.S. 648, 654, 99 S. Ct. 1391, 1396, 59 L.Ed.2d 660 (1979); See also United States v. Hensley, 469 U.S. 221, 226, 105 S. Ct. 675, 679, 83 L.Ed.2d 604 (1985); Colorado v. Bannister, 449 U.S. 1, 4 n. 3, 101 S. Ct. 42, 44 n. 3, 66 L.Ed.2d 1 (1980) (When an officer turns on his blue lights, he or she has clearly initiated a stop). Because it was not conducted pursuant to a warrant, the investigatory stop was presumptively unreasonable. However, the lower courts appropriately denied the defendant's motion to suppress because the seizure in this case was conducted pursuant to a narrowly defined exception to the warrant requirement.

In Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968), the United States Supreme Court applied a balancing test[8] to determine whether the law enforcement practice of "stop and frisk" violated the proscriptions of the Fourth Amendment to the United States Constitution. In that case, a police officer became suspicious of two men who separately and repeatedly walked up and down a street peering into a store window. After each trek, the men talked to a third man up the street. The officer, after observing this conduct for a short

[8]The balancing test was first applied in Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). In his concurring opinion, Justice Reid maintains that courts must engage in "detailed balancing" on a case-by-case basis to determine the constitutionality of an investigatory stop. That statement indicates a misunderstanding of the nature and purpose of the balancing test. The balancing test is not a matter for case-by-case application, but rather "a technique for establishing the quantum of evidence needed for certain distinct kinds of official action." Wayne R. LaFave, 4 Search & Seizure, A Treatise on the Fourth Amendment, § 9.1(d), p.13 (3d ed. West 1996); See e.g. Chandler v. Miller, _ U.S. _, _, 117 S.Ct.1295,1301, 137 L.Ed.2d 513 (1997); Whren, ___ U.S. at __, 116 S.Ct. at 1776. While case-by-case balancing "might well be a stimulating exercise in the rarefied atmosphere of an appellate court or law school classroom, it is clearly asking too much to expect policemen to make on-the-spot judgments in this way or, indeed, to require trial judges to review police conduct in this fashion." Lafave, § 9.1(d), p. 13. Unlike Justice Reid, we decline to adopt that approach, which is both contrary to well-established law and unworkable in practice.

time, followed the suspects, stopped and frisked them, and discovered that two of them were carrying pistols.  Charged with the crime of carrying a concealed weapon, Terry moved to suppress the evidence on the basis that the stop and frisk was unconstitutional.  Balancing the intrusion on the individual's Fourth Amendment privacy interests against the promotion of legitimate governmental interests, the Court in Terry determined that the law enforcement practice of a brief investigatory stop is constitutionally permissible if the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed.[9]  Id.

Eleven years later in Delaware v. Prouse, the Court concluded that the same standard applied in the context of investigatory automobile stops.  In that case a police officer on a "roving patrol" aimed at detecting unlicensed drivers made a suspicionless stop of an automobile.  The purpose of the stop was to

---

[9]In his concurring opinion, Justice Reid concludes that the stop in this case was invalid under Terry, but constitutionally sound because based upon probable cause.  It is well-settled that "the level of suspicion required for a Terry stop is obviously less demanding than that for probable cause."  United States v. Sokolow, 490 U.S. 1, 7-8, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989).  Therefore, Justice Reid's conclusion is legally inconsistent and is a result of his erroneous holding that a constitutionally valid investigatory stop requires not only reasonable suspicion, but also "exigent circumstances."  Contrary to Justice Reid's concurring opinion, neither Terry nor its progeny articulate a second "exigent circumstances" requirement.  Indeed, the phrase, "exigent circumstances" is itself a term of art which denotes an independent exception to the warrant requirement of the Fourth Amendment.  The cases cited by Justice Reid do not support his holding.  In State v. Pully, 863 S.W.2d 29 (Tenn. 1993), the police officer initiated the investigatory stop upon an anonymous informant's tip that a person was driving through a neighborhood threatening residents with a gun.  To justify police action under Tennessee law an informant's tip must be reliable, which requires a showing of both the informant's credibility and basis of knowledge.  State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989).  This Court in Pully simply held that when a threat of impending violence is involved the legal test of reliability of an anonymous informant's tip need not be strictly enforced.  Since the stop in this case was not initiated as a result of an anonymous informant's tip, Pully is inapplicable and does not support Justice Reid's conclusion that Terry articulated an "exigent circumstances" requirement.  Moreover, Justice Reid's assertion that our holding "would allow the detention and at least a patdown search of any person suspected of possessing illegal drugs or other contraband" is erroneous.  A frisk is warranted under Terry only if the police officer has a reasonable suspicion based upon specific and articulable facts that the suspect is armed.  Id., 392 U.S. at 27, 88 S.Ct. at 1883.

–9–

check the driver's license and registration. The officer stopped Prouse's automobile because he "saw the car in the area and wasn't answering any complaints. . . ." Id., 440 U.S. at 651, 99 S.Ct. at 1394. When the officer approached the car, he smelled marijuana and thereafter seized the marijuana, which was in plain view on the floor of the car. In concluding that the suspicionless, random stop was unconstitutional, the Prouse court described the balancing test as follows:

> The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents, in order to safeguard the privacy and security of individuals against arbitrary invasions. Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interest against its promotion of legitimate governmental interests. Implemented in this manner, the reasonableness standard usually requires, at a minimum, that the facts upon which an intrusion is based be capable of measurement against an objective standard, whether this be probable cause or a less stringent test. [footnote citing Terry] In those situations in which the balance of interests precludes insistence upon some quantum of individualized suspicion, other safeguards are generally relied upon to assure that the individual's reasonable expectation of privacy is not subject to the discretion of the official in the field.

Id., 440 U.S. at 653-54, 99 S.Ct. at 1396 (emphasis added)(internal citations and quotations omitted). Utilizing that test, the Prouse Court held "that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping

-10-

an automobile and detaining the driver in order to check his license and the registration of the automobile are unreasonable under the Fourth Amendment." Id., 440 U.S. at 663, 99 S.Ct. at 1401 (emphasis added). Prouse, therefore, stands for the proposition that investigatory stops based upon reasonable suspicion that a driver is unlicensed are constitutionally permissible.[10] See also Chandler v. Miller, __ U.S. __, 117 S.Ct. 1295, 1298, 137 L.Ed.2d 513 (1997)(The Fourth Amendment's prohibition against "unreasonable searches and seizures "generally bars officials from undertaking a search or seizure absent individualized suspicion."); See also Griffin v. State, 604 S.W.2d 40, 42 (Tenn. 1980); State v. McCullough, 906 S.W.2d 3 (Tenn. Crim. App. 1995).

Likewise, in Watkins, this Court upheld the constitutionality of an investigatory stop of a motor vehicle and the ensuing search, where the stop was based upon reasonable suspicion. Id., 827 S.W.2d at 294. In that case, the officer initiating the stop had personal knowledge that a capias had been issued for the defendant's arrest. Other officers also had informed the arresting officers that the defendant often drove a black Cadillac inscribed with the words, "The Duke." When the officers observed a car matching that description, they "decided

---

[10]Justice Reid maintains that our interpretation is inconsistent with the language of Prouse. He quotes the following sentence from that case: "We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with the unbridled discretion of police officers." In fact, that language supports our interpretation. The stop in Prouse was completely random and not based upon any level of individualized suspicion. The police officer's discretion was unbridled. It was the absence of reasonable suspicion which invalidated the stop, not the absence of exigent circumstances. See also Hughes v. State, 588 S.W.2d 296 (Tenn. 1979) However, where, as here, an investigatory stop is initiated upon a reasonable suspicion that a driver is unlicensed, the police officer is not exercising unbridled discretion, and the stop is constitutional.

-11-

to stop the vehicle and investigate the identity of the driver." Id., 827 S.W.2d at 295. After stopping the car, asking for a driver's license, and learning that the defendant had none, the officers called in by radio to verify the continuing viability of the capias. Id. The capias was verified and the officers arrested the defendant and searched the vehicle. Considering the totality of the circumstances this Court refused to suppress the evidence discovered during the search, holding that the initial stop was constitutionally valid because it was based upon reasonable suspicion, supported by specific and articulable facts, "that the defendant was the driver of the vehicle and that he was the person wanted on the outstanding capias." Id., 827 S.W.2d at 295.

In so holding, we observed that a court must consider the totality of the circumstances when evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts. Id., 827 S.W.2d at 294; United State v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). Circumstances relevant to that evaluation include, but are not limited to, the officer's personal objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. A court must also consider the rational inferences and deductions that a trained officer may draw from the facts and circumstances known to him. Watkins, 827 S.W.2d at 294; Cortez, 449 U.S. at 418, 101 S.Ct. at 695; Terry, 392 U.S. at 21, 88 S.Ct. at 1880.

> The officer, of course, must be able to articulate
> something more than an inchoate and unparticularized

-12-

suspicion or hunch. The Fourth Amendment requires some minimal level of objective justification for making the stop. That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means a fair probability that contraband or evidence of a crime will be found and the level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause.

Sokolow, 490 U.S. at 7-8, 109 S.Ct. at 1585 (emphasis added)(internal citations and quotations omitted).

Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990); State v. Pulley, 863 S.W.2d 29, 32 (Tenn. 1993); Cf. Peters v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)(companion case to Terry in which the Court held it was unnecessary to discuss reasonable suspicion since the officer had probable cause for the arrest).

Moreover, the availability of other less intrusive investigatory techniques is not relevant to the constitutional validity of an officer's decision to initiate the investigatory stop, if an investigatory stop is based upon specific and articulable facts giving rise to a reasonable suspicion. Indeed, the United States Supreme Court in Sokolow expressly rejected the notion that law enforcement officials are

obligated to use the least intrusive means to verify or dispel their suspicions. "The reasonableness of the officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques." Id., 490 U.S. at 11, 109 S.Ct. at 1581. [11] In Watkins, this Court implicitly rejected that argument by upholding the stop even though the police officers did not verify the capias until after the automobile was stopped and the defendant identified.

Considering the totality of the circumstances of this case in light of the well-settled principles of law set forth above, we conclude that the officer's decision to initiate the investigatory stop was based upon reasonable suspicion, supported by specific and articulable facts, that the defendant was driving on a revoked license. The officer had previously arrested Yeargan, so he was acquainted with the defendant and could identify the defendant by sight. In addition, the officer had personal knowledge that Yeargan's driver's license had been revoked for a period of one year, and that only six months had passed since the revocation. When the officer observed Yeargan driving the automobile, therefore, he had a reasonable suspicion based upon articulable and specific facts that Yeargan was committing a criminal offense, driving on a revoked license. Prouse, supra; McCullough, supra; Roberson v. Metro. Gov't of Nashville & Davidson Co., 56 Tenn. App. 729, 412 S.W.2d 902, 905 (Tenn. App. 1966) (police officer who arrests a man for drunk driving and testifies at trial against the man who was convicted and whose

_____

[11]Justice Reid's assertion that the availability of less intrusive investigatory means should be considered by courts evaluating the constitutionality of investigatory stops is directly contrary to Sokolow.

-14-

license was revoked for one year, may arrest him when he observes the man driving the following day). Contrary to the defendant's assertions, the officer had no constitutional obligation to verify the status of the defendant's license before making the stop. Indeed, the availability of less intrusive investigatory techniques does not vitiate the constitutional validity of a stop which is supported by reasonable suspicion.

## CONCLUSION

In his concurring opinion Justice Reid contends that the investigatory stop in this case was invalid because it was not supported by exigent circumstances as well as reasonable suspicion. Rather than embarking on a path fraught with unknown consequences, we adhere to the well-settled principle of law, that to be constitutionally valid under either the Fourth Amendment or Article I, Section 7, a brief investigatory stop simply must be based upon reasonable suspicion which is supported by specific and articulable facts. Because the investigatory stop in this case was based upon reasonable suspicion, it was valid under both the federal and state constitutions. Accordingly, the lower courts properly refused to suppress the evidence of intoxication derived from field sobriety tests and the officer's personal observation of the defendant after the stop. The judgment of the Court of Criminal Appeals upholding the trial court's denial of the defendant's motion to suppress is affirmed.

_____
FRANK F. DROWOTA III,

-15-

JUSTICE

**Concur:**
Anderson, C.J.,
Birch, J, and O'Brien, Sp.J..

**Separate Opinion Concurring in Results**
Reid, J.