IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 14, 2013 Session

**STATE OF TENNESSEE v. PATRICK TIMOTHY LOWE**

**Appeal from the Circuit Court for Franklin County**
**No. 19783     Thomas W. Graham, Judge**

**No. M2012-01741-CCA-R3-CD - Filed July 5, 2013**

Appellant, Patrick Timothy Lowe, pleaded guilty to one count of driving under the influence of an intoxicant, first offense, subject to reserving a certified question of law. The trial court imposed the agreed-upon suspended sentence of eleven months, twenty-nine days. Following our review of the record, we affirm the judgment of the trial court. However, we remand this case for entry of judgment forms reflecting the dispositions of Count I of the indictment, driving with a blood alcohol content of .08% or more, and Count III of the indictment, reckless driving.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded for Entry of Corrected Judgment**

ROGER A. PAGE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Paul D. Cross, Monteagle, Tennessee, for the appellant, Patrick Timothy Lowe.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; James Michael Taylor, District Attorney General; and Steven M. Blount, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. Procedural History and Facts

### A. Procedural History

A Franklin County grand jury returned a three-count indictment charging appellant with driving with a blood alcohol content of .08% or more, driving under the influence of an intoxicant, and reckless driving based on events that transpired on March 24, 2011. Appellant filed a motion to suppress, which was denied by the trial court. He entered a guilty plea to Count II of the indictment, driving under the influence of an intoxicant, first offense. The trial court imposed the agreed-upon sentence of eleven months, twenty-nine days, suspended. Appellant's guilty plea reserved a certified question: "Whether the actions of Sewanee Police Department Officer Cardwell in opening the door of [appellant's] car, awakening him, and requiring him to get out and submit to questioning and sobriety testing can be justified as a proper exercise of the community caretaking function of law enforcement?"

### B. Facts from the Suppression Hearing

At the hearing on appellant's motion to suppress, the State called Margaret Donohue as its first witness. She testified that on March 24, 2011, she arrived at her home in the afternoon hours and noticed a vehicle parked "on the line" between her property and her neighbor's property. Ms. Donohue described the area in which the vehicle was parked as "a graveled area between the edge of the street and where [her] and [her] neighbor's yards begin[,] where cars can pull off and park." The vehicle was not parked in a perfectly parallel position but was "angled in." She noticed that the vehicle's motor was running.

Ms. Donohue was inside of her home for approximately fifteen minutes. When she exited her home, the vehicle was still parked in the gravel area. Ms. Donohue testified that she thought that someone had gone to her neighbor's home, which also operated as a bed and breakfast, and had forgotten that the vehicle was still running. She knocked on her neighbor's door, but no one answered. Ms. Donohue decided that she would check the vehicle's doors, and if they were unlocked, she would turn off the motor. When she opened one of the doors, appellant "slumped" toward her. Ms. Donohue stated that she became frightened. She spoke to appellant, but he did not respond. She did not know if appellant was alive. She turned off the engine, went inside her home, telephoned the police, and described what she had witnessed. Ms. Donohue testified that she remained at her home until the police arrived.

On cross-examination, Ms. Donohue recalled that to the best of her memory, she told the dispatcher that when she opened the vehicle's door, a "body" slumped toward her and that she believed the person was in distress. She did not recall whether she observed any indication that appellant had been drinking alcohol. Ms. Donohue admitted that she was "fairly certain" that she turned off the vehicle's engine, but she did not "remember specifically." She recalled that the windows were up, and she assumed that appellant slumped out of the vehicle when she opened the door because he had been leaning on it.

Officer Steven Cardwell with the Sewanee Police Department testified that he responded to the call involving a man who was slumped over and unresponsive in a parked car. When he arrived, he drove past the parked car and pulled off onto the gravel area. He approached the vehicle and observed a man slumped over the steering wheel. Officer Cardwell recalled that the vehicle was not running when he approached it, and the door was closed. He knocked on the window, but appellant did not respond. He then opened the door and immediately detected a strong smell of an alcoholic beverage emanating from the driver. He shook appellant several times and was able to rouse him. Officer Cardwell asked appellant to step out of his vehicle and asked him for identification. Appellant gave Officer Cardwell his name, but when the officer asked appellant how much he had to drink, appellant did not respond. Officer Cardwell asked appellant if he knew where he was, and appellant responded, "London."

Officer Cardwell then administered three field sobriety tests, which appellant failed. He testified that in his opinion, appellant was intoxicated. He arrested appellant for driving under the influence and explained the implied consent law. Officer Cardwell escorted appellant to the hospital for a blood alcohol test, the result of which was 0.24.

On cross-examination, Officer Cardwell acknowledged that despite the "steep" and uncustomary angle at which appellant parked his vehicle, he would not have issued appellant a parking citation. He stated that he responded to the call within three to four minutes of Ms. Donohue's initial contact. When he approached appellant's vehicle, he did not activate the blue lights on his police cruiser, and he did not call for back-up. He never removed his weapon from its holster. Officer Cardwell confirmed that appellant's speech was slurred.

At the close of the evidence, the trial court ruled:

I don't know what other set of facts would be necessary to make it proper for a police officer to make an inquiry that would be any stronger than these[:] possible dead body in a car, motor running. So the least he could do is go and try to see what was going on with the individual. The individual was

unresponsive. [He] [o]pens the door, smells alcohol immediately. Pretty strong case[.] I deny the suppression.

## II. Analysis

### A. Certified Question

Rule 3(b)(2) of the Tennessee Rules of Appellate Procedure permits a defendant to plead guilty while reserving the right to appeal a certified question of law that is dispositive of the case. In doing so, he must also comply with the requirements of Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure. Following our review of the record, we conclude that appellant has properly certified a question of law, and the State does not dispute that he has done so.

### B. Motion to Suppress

This court will uphold a trial court's findings of fact in a suppression hearing unless the evidence preponderates otherwise. *State v. Day*, 263 S.W.3d 891, 900 (Tenn. 2008) (citing *State v. Williams*, 185 S.W.3d 311, 314 (Tenn. 2006)). On appeal, "[t]he prevailing party in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Id.* (citing *Williams*, 185 S.W.3d at 314-15; *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). However, the trial court's application of the law to the facts is a question of law that we review de novo. *Id.* (citing *Williams*, 185 S.W.3d at 315; *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)). In this case, because the parties do not dispute the facts but only dispute the trial court's application of the law to the facts, our review is de novo. *Id.*

"Both the state and federal constitutions protect against unreasonable searches and seizures; the general rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered is subject to suppression." *State v. Echols*, 382 S.W.3d 266, 277 (Tenn. 2012). Our supreme court has recognized three categories of police interactions with private citizens: "(1) a full-scale arrest, which requires probable cause; (2) a brief investigatory detention, requiring reasonable suspicion of wrongdoing; and (3) a brief police-citizen encounter, requiring no objective justification." *Id.* (citing *State v. Daniel*, 12 S.W.3d 420, 424 (Tenn. 2000)); *State v. Williams*, 185 S.W.3d 311, 315 (Tenn. 2006). The third category encompasses the community caretaking or public safety functions of law enforcement. *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973); *State v. James David Moats*, — S.W.3d —, — , No. E2010-02013-SC-R11-CD, 2013 WL 1181967, at *11 (Tenn. Mar.

-4-

22, 2013); *Williams*, 185 S.W.3d at 315; *State v. Hawkins*, 969 S.W.2d 936, 939 (Tenn. Crim. App. 1997).

Voluntary or "consensual" encounters between police and citizens are not considered seizures and do not invoke constitutional protections. *Williams*, 185 S.W.3d at 315. In general terms, a law enforcement officer may initiate contact with an individual in a public setting and question him without implicating constitutional protections, "[s]o long as a reasonable person would feel free 'to disregard the police and go about his business.'" *Id.* (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). Our supreme court has held that "'[a] police officer may approach a car parked in a public place and ask for driver identification and proof of vehicle registration, without any reasonable suspicion of illegal activity.'" *Id.* (quoting *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn. 1993)). However, "[a] consensual police-citizen encounter becomes a seizure, thereby triggering a constitutional analysis of the police action, 'when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Id.* at 315-16 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968)).

The parameters of appellant's certified question focus our attention on whether Officer Cardwell's actions in opening the door of appellant's vehicle, awakening him, requiring him to exit his vehicle, and submitting him to questioning and sobriety testing can be justified under the community caretaking function of law enforcement. In analyzing this question, we must first determine the nature of Officer Cardwell's initial encounter with appellant. The record is undisputed that this was not a full-scale arrest at the outset. Officer Cardwell testified that when he initially approached appellant's vehicle, he did not activate the blue lights on his police cruiser and did not remove his weapon from its holster. Officer Caldwell took no action that constituted a show of authority. Therefore, this was not a brief investigatory detention or a "stop," for Fourth Amendment purposes. *Cf. State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000) (holding that "[u]pon turning on the blue lights of a vehicle, a police officer has clearly initiated a stop and has seized the subject of the stop"); *Pulley*, 863 S.W.2d at 30 (noting that a seizure occurred because "[w]hen an officer turns on his blue lights, he or she has clearly initiated a stop").[1] Thus, Officer Cardwell's initial encounter with appellant was a brief "consensual" encounter that required no objective justification. *See Williams*, 185 S.W.3d at 315. He had received information that a driver was slumped

---

[1] The activation of emergency equipment or blue lights as a demonstration of police authority has recently been questioned. *See James David Moats*, 2013 WL 1181967, at *11 (quoting *Williams*, 185 S.W.3d at 318) (" Not all use of the emergency blue lights on a patrol car will constitute a show of authority resulting in the seizure of a person . . . *[W]hen officers act in their community caretaking function, they may want to activate their emergency equipment for their own safety and the safety of other motorists*.) (emphasis in original).

over inside a vehicle and that a citizen had tried to assist but found the driver to be unresponsive. Because Officer Cardwell's objective was to ascertain whether appellant was in distress, this encounter also clearly falls within the permissible boundaries of the community caretaking function. Officer Cardwell needed no objective justification for his encounter with appellant; however, his receiving a report from a concerned citizen, taken together with his observing a driver slumped forward in a vehicle and his unsuccessfully attempting to rouse the driver, clearly justified his action in opening appellant's car door and awakening him. *Cf. State v. Thomas G. McConnell*, No. M2012-02238-CCA-R3-CD, 2013 WL 1912584, at *4 (Tenn. Crim. App. May 8, 2013) (community caretaking function held not applicable to a traffic stop based on a vehicle's stopping at a flashing yellow light for "a few seconds" and stop is initiated by police officer using his emergency equipment as a show of authority).

Once the door was opened, however, Officer Cardwell smelled the odor of an alcoholic beverage emanating from appellant and asked appellant to exit the vehicle. At that point, Officer Cardwell had an articulable and reasonable suspicion that appellant had committed the offense of driving under the influence of an intoxicant. The nature of the police encounter transformed from a brief "consensual" encounter to a brief investigatory stop that was based on the officer's reasonable suspicion that a crime had been committed. It is doubtful that appellant felt "free to disregard the police and go about his business." *See Williams*, 185 S.W.3d at 315. Nonetheless, Officer Cardwell's further detention of appellant was justified by articulable and reasonable suspicion, and he properly questioned appellant and administered three field sobriety tests. Based on appellant's performance on the field sobriety tests and his response to questions, Officer Cardwell established probable cause to arrest him for driving under the influence of an intoxicant.

In sum, while appellant's initial encounter with the police was proper under the community caretaking function of law enforcement and required no objective justification, the encounter became a brief investigatory stop supported by an articulable and reasonable suspicion when Officer Cardwell smelled the odor of alcohol coming from appellant and/or his vehicle. Appellant's constitutional rights were not violated during the encounter, and he is not entitled to relief.

**CONCLUSION**

Based on our review of the record, the parties' briefs, arguments of counsel, and the applicable law, we affirm the judgment of the trial court. However, we remand this case for

entry of judgment forms reflecting the dismissal of Counts I and III of the indictment, driving with a blood alcohol content of .08% or more and reckless driving, respectively.


_____

ROGER A. PAGE, JUDGE