# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
December 10, 2013 Session

## STATE OF TENNESSEE v. JERRY R. SHOUSE

## Appeal from the Circuit Court for Maury County
### No. 21874    Jim T. Hamilton, Judge

---

## No. M2013-00863-CCA-R3-CD - Filed April 21, 2014

---

Appellee, Jerry R. Shouse, was indicted by the Maury County Grand Jury with one count of driving under the influence and one count of violation of the open container law. Prior to trial, Appellee filed a motion to suppress the evidence on the basis that the warrantless seizure was arbitrary and oppressive. After a hearing, the trial court granted the motion to suppress by written order. The State filed a notice of appeal on the same day that the order of nolle prosequi was entered. After a review of the record and applicable authorities, we determine based on the recent decision of *State v. Moats*, 403 S.W.3d 170 (Tenn. 2013), the trial court properly granted the motion to suppress where the actions of the officer were not authorized under any exception to the warrant requirement. Consequently, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which CAMILLE MCMULLEN, J., joined; and ALAN E. GLENN, J., Concurred in Results.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; and Mike Bottoms, District Attorney General, for the appellant, State of Tennessee.

J. Russell Parkes and Charles M. Molder, Columbia, Tennessee for the appellee, Jerry R. Shouse.

# OPINION

## *Factual Background*

Appellee was indicted for driving under the influence and violation of the open container law after Columbia Police officer Sergeant Jeremy Haywood observed Appellee in a pick-up truck parked in the parking lot of a grocery store at 11:00 p.m. on February 8, 2012. Prior to trial, Appellee filed a motion to suppress the results of an unlawful search and seizure.

At the hearing, Sergeant Haywood testified. He described Appellee as "slumped" against the window either "asleep or passed out" in the truck. Sergeant Haywood pulled up behind the truck, exited his patrol car, and walked up to the truck. The blue lights on the patrol car were not activated because the officer was in a parking lot, far away from the road.

Sergeant Haywood knocked on the window and door of the truck. Appellee did not respond. Sergeant Haywood stated that he initially was "checking on [Appellee's] welfare." From the outside of the truck he "couldn't even tell positively whether he was breathing."

He could not recall if the truck was running but saw the keys in the ignition. Eventually, Sergeant Haywood opened the door to the truck and tried to shake Appellee to rouse him. When he opened the door, he "detected a strong odor of alcohol" and determined there "may very well be a criminal element." The officer pulled the keys out of the ignition at that time for safety purposes.

At that time, Appellee was removed from the truck for field sobriety tasks. Appellee had difficulty performing the tasks and eventually told the officer to "just take me to jail right now."

At the conclusion of the hearing, the trial court took the matter under advisement. Several months later, the trial court issued an order, granting the motion to dismiss on March 11, 2013. On April 3, 2013, at 11:02 a.m., the State filed a notice of appeal pursuant to Rule 3(c) of the Tennessee Rules of Appellate Procedure.[1] On the same day at 11:48 a.m., the trial court filed a case status order noting that the case shall be "nolle prosequi."

---

[1] Appellee filed a motion to dismiss this appeal prior to oral argument. In the motion, Appellee argued that this Court lacked jurisdiction to hear the appeal. This Court denied the motion, directing the parties to brief this issue.

*Analysis*

The first issue we must determine is whether this case is properly before us. Appellee argues that this Court does not have jurisdiction to hear the appeal because initially the State filed a premature notice of appeal and once the trial court filed the nolle prosequi order, the case against Appellee was dismissed and there was nothing from which the State could appeal.

Procedurally, the State filed a notice of appeal and proceeded to appeal the case as of right pursuant to Rule 3(c) of the Tennessee Rules of Appellate Procedure. The notice of appeal was filed after the grant of the motion to suppress but prior to the entry of the order of nolle prosequi.

Tennessee Rule of Appellate Procedure 3(c) provides as follows:

> (c) Availability of Appeal as of Right by the State in Criminal Actions. -- In criminal actions an appeal as of right by the state lies only from an order or judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Criminal Appeals: (1) the substantive effect of which results in dismissing an indictment, information, or complaint; (2) setting aside a verdict of guilty and entering a judgment of acquittal; (3) arresting judgment; (4) granting or refusing to revoke probation; or (5) remanding a child to the juvenile court. The state may also appeal as of right from a final judgment in a habeas corpus, extradition, or post-conviction proceeding, from an order or judgment entered pursuant to Rule 36 or Rule 36.1, Tennessee Rules of Criminal Procedure, and from a final order on a request for expunction.

In *State v. Meeks*, 262 S.W.3d 710 (Tenn. 2008), our supreme court examined the proper route for the State to appeal a trial court's grant of a motion to suppress. The court acknowledged that "the courts and the litigants have been left to work through the application of [Tennessee Rules of Appellate Procedure] 3(c), 9, and 10 to orders granting an accused's motion to suppress or exclude evidence. The results have produced procedural confusion . . . ." *Meeks*, 262 S.W.2d at 719.

In *Meeks*, the supreme court examined whether a trial court's order suppressing evidence creates a situation where the "'substantive effect'" of the order "'results in dismissing an indictment, information, or complaint'" pursuant to Rule 3(c)(1). *Id.* at 718-20. The supreme court then criticized several decisions by this Court "that [held Rule 3] does not require an order dismissing the indictment, information, or complaint as a prerequisite to an appeal." *Id.* at 719. The court stated:

-3-

The Court of Criminal Appeals' interpretation of [Rule 3(c)(1)] misapprehends the plain language of the rule because it overlooks the word "results." The State may appeal as of right from an order suppressing or excluding evidence only when the substantive effect of that order "results" in the dismissal of the indictment, information, or complaint. When used as a verb, the word "result" means "[t]o arise as a consequence, effect, or conclusion from some action, process, etc." or "to end or conclude in a specified manner." 13 Oxford English Dictionary 761 (2d ed. 1989). Thus, to trigger [Rule 3(c)(1) ], the order suppressing or excluding the evidence must produce the entry of an order dismissing an indictment, information, or complaint.

*Id.* at 719-20 (footnote omitted). Thus, our supreme court has made it clear that, in order to necessitate a Rule 3(c)(1) appeal, the dismissal of the case must have actually resulted from a trial court's order.

In this case, the trial court entered an order of nolle prosequi after the State filed the notice of appeal. An order of "[n]olle prosequi is a formal entry upon the record . . . by which" the State dismisses the defendant's charges. *See State v. D'Anna*, 506 S.W.2d 200, 202 (Tenn. Crim. App. 1973). Our cases establish that a nolle prosequi is a discharge of the case without a conviction or acquittal. Ordinarily, a nolle prosequi is not a bar to a subsequent prosecution when entered prior to trial, but a defendant cannot be convicted unless the State begins anew the criminal process against the defendant. *See State ex rel. Hobbs v. Murrell*, 93 S.W.2d 628, 630 (Tenn. 1936), *State v. Neely*, 1 S.W.3d 679, 682 (Tenn. Crim. App. 1999); *State v. Moore*, 713 S.W.2d 670, 674-75 (Tenn. Crim. App. 1985); *D'Anna*, 506 S.W.2d at 202.

Looking at the text of Rule 3(c), it is apparent that the entry of a nolle prosequi is not one of the specifically enumerated circumstances upon which an appeal as of right is available to the State. As explained in *Meeks*, the Rules of Appellate Procedure grant the State an appeal as of right when the trial court's pre-trial ruling has the substantive effect of dismissing the charges against a defendant. Tenn. R. App. P. 3(b)(c); *see Meeks*, 262 S.W.3d at 719-20. In this case, the mere grant of the motion to suppress was not, in and of itself, dispositive of the indictment against Appellee. Instead, it was not until the entry of the order of nolle prosequi that resulted in the substantive effect of dismissing the indictment against Appellee.

The State filed the notice of appeal prior to the entry of the order of nolle prosequi. Thus, at the time, there was no order in existence that resulted in the substantive effect of dismissing the indictment. However, premature notice of appeal is treated as filed after the entry of the judgment from which the appeal is taken. Tenn. R. App. P. 4(d). Therefore, we

-4-

conclude that once the trial court entered the order of nolle prosequi, this became a suitable case for a State appeal as of right under Tennessee Rule of Appellate Procedure 3(c), and we will treat and consider the case as such. Moreover, at least one panel of this Court has permitted an appeal by the State after an order of nolle prosequi. *See, e.g. State v. Wade Allen Willis*, No. M2012-01577-CCA-R3-CD, 2013 WL 1645740, at *4 (Tenn. Crim. App., at Nashville, April 17, 2013) (determining State could appeal from a nolle prosequi of indictment resulting from grant of motion to suppress).

*Grant of Motion to Suppress*

The State argues on appeal that the trial court improperly granted the motion to suppress. Specifically, the State argues that the preponderance of the evidence shows that sergeant Haywood "acted in a community caretaking function to check on the welfare of [Appellee] and appropriately approached [Appellee's] truck, and finding [Appellee] slumped over the steering wheel, properly knocked on the door and window to rouse him." The State concludes that Sergeant Haywood "would have been derelict in the performance of his duty if he had failed to take immediate action."

"This Court will uphold a trial court's findings of fact in a suppression hearing unless the evidence preponderates otherwise." *State v. Hayes*, 188 S.W.3d 505, 510 (Tenn. 2006) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). On appeal, "'[t]he prevailing party in the trial court is afforded the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence."'" *Id.*(quoting *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998))). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. Our review of a trial court's application of law to the facts is de novo, with no presumption of correctness. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001) (citing *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)). When the trial court's findings of fact are based entirely on evidence that does not involve issues of witness credibility, however, appellate courts are as capable as trial courts of reviewing the evidence and drawing conclusions, and the trial court's findings of fact are subject to de novo review. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000). "However, when the trial court does not set forth its findings of fact upon the record [ ], the appellate court must decide where the preponderance of the evidence lies." *State v. Bobby Killion*, No. E2008-01350-CCA-R3-CD, 2009 WL 1748959, at *13 (Tenn. Crim. App., at Knoxville, June, 22, 2009), *perm. app. denied*, (Tenn. Oct. 26, 2009); *see also Fields v. State*, 40 S.W.3d 450, 457 n.5 (Tenn. 2001); *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures by government agents. *See* U.S. Const. amend. IV; Tenn. Const. art. I, § 7. "These constitutional provisions are designed to "'safeguard the privacy and security of individuals against arbitrary invasions of government officials." *State v. Moats*, 403 S.W.3d 170, 177 (Tenn. 2013) ((quoting *State v. Randolph*, 74 S.W.3d 330, 334 (Tenn. 2002) (quoting *Camara v. Mun. Ct.*, 387 U.S. 523, 528 (1967))). The Tennessee Supreme Court has noted previously that "[a]rticle I, [section] 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment [of the United States Constitution]," and that federal cases applying the Fourth Amendment should be regarded as "particularly persuasive." *Sneed v. State*, 423 S.W.2d 857, 860 (Tenn. 1968).

Under both constitutions, "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971)); *see also State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003). One such exception is a brief investigatory stop by a law enforcement officer if the officer has a reasonable suspicion, based upon specific and articulable facts, that a person has either committed a criminal offense or is about to commit a criminal offense. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Binette*, 33 S.W.3d at 218. This narrow exception has been extended to the investigatory stop of vehicles. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975); *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). In evaluating whether a police officer has a reasonable suspicion, supported by specific and articulable facts, a court must consider the totality of the circumstances. *Binette*, 33 S.W.3d at 218. Those circumstances may include the personal observations of the police officer, information obtained from other officers and agencies, information obtained from citizens, and the pattern of operation of certain offenders. *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). Additionally, the court must consider any rational inferences and deductions that a trained officer may draw from those circumstances. *Id.* Reasonable suspicion is something more than an "inchoate and unparticularized suspicion or hunch." *Terry*, 392 U.S. at 27.

Recently, the supreme court addressed an issue similar to the one herein in *State v. Moats*, 403 S.W.3d 170 (Tenn. 2013). In that case, a police officer observed the defendant sitting in a parked car in the parking lot of a grocery store at 2:00 a.m. *Moats*, 403 S.W.3d at 175. When the officer saw the truck in the same location five minutes later, the officer parked "behind the truck, activated her blue lights, and called in the license plate number." *Id.* During a brief conversation with the defendant, the officer saw an open beer in the cup holder and noticed that the defendant was "'disoriented, very slow to speak, very sleepy

-6-

acting.'" *Id.* The defendant eventually failed field sobriety tests and was placed under arrest for DUI. On appeal, our supreme court reversed the defendant's conviction, concluding that "the circumstances here demonstrate that the officer was not acting within a community caretaking role and did not have reasonable suspicion or probable cause to seize the Defendant." *Id.* at 188.

Importantly, in *Moats* the court concluded that the community caretaking doctrine applied only to consensual police-citizen encounters, was not an exception to the warrant requirement and, thus, did not justify the warrantless seizure in that case. *Id.* The majority[2] noted the following:

> We are aware that the doctrine of community caretaking, as interpreted and applied in our state-i.e., as a type of third-tier consensual police-citizen encounter-represents a minority rule among other jurisdictions. Indeed, as the dissent points out, the vast majority of courts have applied the community caretaking doctrine as "an exception" to the warrant requirement of the Fourth Amendment to the United States Constitution. *E.g., United States v. Coccia*, 446 F.3d 233, 237-38 (1st Cir. 2006); *United States v. Pichany*, 687 F.2d 204, 205 (7th Cir. 1982); *People v. Luedemann*, 857 N.E.2d 187, 198-99 (2006); *State v. Graham*, 175 P.3d 885, 890 (2007); *Ullom v. Miller*, 705 S.E.2d 111, 120 (2010). As noted in this opinion, however, this Court has for decades interpreted article I, section 7 of the Tennessee Constitution as imposing stronger protections than those of the federal constitution, which, under stare decisis, we are not prepared to dismissively brush aside. Particularly in the area of search and seizure law, we have often rejected the standards adopted by the United States Supreme Court in favor of more protective doctrines, tests, and rules. *See, e.g., State v. Carter*, 16 S.W.3d 762, 768 n.8 (Tenn. 2000) (noting that Tennessee has never recognized the "good faith" exception to the exclusionary rule that was adopted by the Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984)); *State v. Jacumin*, 778 S.W.2d 430, 435-36 (Tenn. 1989) (refusing to adopt the test for probable cause as established by the Supreme Court in *Illinois v. Gates*, 462 U.S. 213 (1983), because it is "inadequate"); *State v. Lakin*, 588 S.W.2d 544, 549 n.2 (Tenn. 1979) ("Where, . . . as in the particular phase of search and seizure law under consideration, there has been a settled development of state constitutional law which does not

_____

[2] Justices Koch and Clark filed a dissenting opinion in which they expressed their displeasure with the determination by the majority that the community caretaking function was limited to consensual police-citizen encounters.

contravene the federal, we are not inclined to overrule earlier decisions unless they are demonstrably erroneous.").

   While we recognize the rationale underlying the majority rule, we see no reason to depart from the standards of community caretaking that have developed in our state, particularly because neither party has articulated a persuasive basis for recognizing this as yet another exception to the constitutional protections against unreasonable searches and seizures.  *See Lakin*, 588 S.W.2d at 549 (recognizing that, in the context of the "open fields" doctrine, "[a]lthough the decisions in this state may be somewhat more restrictive than those in other states or than federal decisions, no compelling reason has been demonstrated in this case for modifying or overruling them").  The Defendant has argued strongly against treating community caretaking as an exception to the warrant requirement, and the State has simply asserted that "the touchstone of this fact-intensive analysis is reasonableness."  Unlike the dissent, we decline to adopt an approach to community caretaking that would diminish "the most basic constitutional rule" that warrantless searches and seizures are per se unreasonable, simply because it has been adopted by a majority of other courts.

403 S.W.3d at 187 n.8.  As further noted by our supreme court in *Moats*, the community caretaking role has also been used to justify the "emergency aid doctrine"; however, the court "decline[d] to address the myriad [of] circumstances under which the community caretaking function might apply in our State."  *Id.* at 186-87 n.7 (citation omitted).

The *Moats* court did state:

Our extensive research suggests that community caretaking can generally be classified into several categories, all of which are separate and distinct from traditional criminal investigation or detection. The primary form of community caretaking . . . is also known as the public safety function and is the type of community caretaking originally identified by the United States Supreme Court.  In *Dombrowski*, the Court observed that

   [b]ecause of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving

automobiles will be substantially greater than police-citizen contact in a home or office.

413 U.S. at 441, 93 S. Ct. 2523. Like the community caretaking standards that have developed in our state, this type of community caretaking described by the Supreme Court "supports relatively minor or regular interactions with the police: approaching parked cars when the driver appears incapacitated or sick or the car is functioning improperly and approaching pedestrians who appear lost, in danger, or ill." The core of any community caretaking function is when the police act to protect or assist the public in some manner outside of "the crime-control paradigm."

403 S.W.3d at 186-87 (footnotes and some internal citations omitted).

Applying the holding in *Moats*, in *State v. Patrick Timothy Lowe*, No. M2012-01741-CCA-R3-CD, 2013 WL 3423965, at *5 (Tenn. Crim. App., at Nashville, July 5, 2013), *perm. app. denied,* (Tenn. Nov. 19, 2013), this Court examined a somewhat similar factual scenario and determined that "[t]he nature of [a] police encounter transformed from a brief 'consensual' encounter to a brief investigatory stop that was based on the officer's reasonable suspicion that a crime had been committed." In *Patrick Timothy Lowe*, a concerned citizen initially reported the defendant slumped over a steering wheel. When the citizen was unable to rouse the defendant, they notified authorities. An officer initiated a welfare check that included activation of the blue lights on a patrol car. The defendant was eventually arrested for DUI. On appeal presenting a certified question, this Court determined that the officers actions were justified where an initial encounter under the community caretaking function of law enforcement became a brief investigatory stop supported by an articulable and reasonable suspicion when the officer smelled the odor of alcohol coming from the defendant. As a result, this Court determined that the defendant's constitutional rights were not violated during the encounter. *Id.*

This case is somewhat distinguishable from *Moats and Patrick Timothy Lowe*. In the case herein, no evidence existed to support a finding that Sergeant Haywood had reasonable suspicion to believe that Appellee was committing a crime. According to Sergeant Haywood, Appellee was merely parked in an empty parking lot. It was not a completely unreasonable hour for someone to be parked in the parking lot, as it was 11:00 p.m. Additionally, Appellee was not breaking any traffic laws. There had been no reports of a person in distress at the location where Appellee was parked. Moreover, the evidence does not entirely establish that Sergeant Haywood approached the vehicle as an exercise of community caretaking. The officer indicated that his purpose in approaching the vehicle was a "welfare check," and the record establishes that the emergency equipment on the officer's emergency car was not

-9-

activated. Other than Appellee remaining motionless and unresponsive during the time that Sergeant Haywood knocked on the window of his truck, no evidence of "an accident or other peril" existed that would have justified Sergeant Haywood's actions. *See State v. Williams*, 185 S.W.3d 311, 318 (Tenn. 2006). Moreover, because our supreme court declined to recognize the community caretaking doctrine as an exception to the Fourth Amendment's warrant and probable cause requirements, and limited the doctrine to consensual police-citizen encounters, we conclude that Sergeant Haywood was not validly acting in a community caretaker role when he opened the door to Appellee's vehicle. Nothing about the encounter described herein can be deemed a consensual police-citizen encounter.

Again, in the case herein, Sergeant Haywood did not activate the emergency equipment on the vehicle, have any reason to believe Appellee was committing a crime, or have a report from another individual that would justify a welfare check on Appellee. In other words, Sergeant Haywood was not acting under the community caretaking exception like the officer in *Patrick Timothy Lowe*. Consequently, we conclude that Sergeant Haywood's decision to open the door to Appellee's truck was not authorized under any exception to the warrant requirement and, therefore, the motion to suppress was properly granted. Accordingly, the judgment of the trial court is affirmed.[3]

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

---

[3]While not raised by either party, we note the argument could be made that the non-consensual opening of the door to Appellant's truck by the officer in this case amounted to a trespass and, therefore, a Fourth Amendment violation. *See U.S. v. Jones*, 132 S.Ct. 945 (2012).